# Exhibit 7



November 2, 2012

*Via ECF*

Hon. Magistrate Judge Michael A. Hammer
Martin Luther King, Jr. Federal Building & U.S. Courthouse
U.S. District Court of New Jersey
50 Walnut Street, Courtroom 3C
Newark, NJ 07101

                    Re:    *Castro, et al. v. Sanofi Pasteur Inc.*, 2:11-cv-07178 (JLL) (MAH)

Dear Magistrate Judge Hammer:

      Plaintiffs Adriana M. Castro, M.D., P.A., Sugartown Pediatrics, LLC, and Marquez and Bengochea, M.D., P.A. ("Plaintiffs"), and defendant Sanofi Pasteur Inc. ("Sanofi") submit this joint discovery letter, pursuant to the Court's Pretrial Scheduling Order (Doc. No. 104) and Local Civil Rule 37.1.

      For nearly two months, the parties have been engaged in extensive efforts to narrow or eliminate discovery disputes, including exchanging numerous lengthy letters and emails, and conducting telephonic conferences on September 7 and September 27. While these efforts were successful in eliminating, narrowing, or deferring many disputes, the parties request the Court's guidance in resolving the following five issues.[1]

## Brief Overview of the Issues in Dispute

**Plaintiffs' Overview:**

      Sanofi's arguments suffer from two fundamental flaws. *First*, Sanofi tries to impose a double-standard as follows: (1) by seeking discovery from Plaintiffs and various third parties

---

[1] The documents attached as exhibits are: Ex. 1 (Aug. 22 Ltr. from Walker to Kass); Ex. 2 (Aug 28 Ltr. from Kass to Walker); Ex. 3 (Sept. 6 Ltr. from Walker to Kass); Ex. 4 (Sept. 12 Ltr. from Walker to Kass); Ex. 5 (Sept. 18 Ltr. from Kass to Walker); Ex. 6 (Sept. 21 Ltr. from Walker to Kass); Ex. 7 (Sept. 24 email from Kass to Walker); Ex. 8 (Sept. 27 email from Walker to Kass); Ex. 9 (Oct. 1 Ltr. from Kass to Walker); Ex. 10 (Oct. 17 Ltr. from Kass to Walker); Ex. 11 (Pls' Obj. and Resp. to Sanofi's First RFPs); Ex. 12 (Sanofi's Obj. and Resp. to Pls.' Third RFPs); Ex. 13 (Sanofi subpoena to Novartis); Ex. 14 (Oct. 3 email memorializing Novartis subpoena agreement); Ex. 15 (Sept. 20 Ltr. from Kass to GSK, at 2); Ex. 16 (L. McDonald Declaration); Ex. 17 (R. Auth Declaration); Ex. 18 (Chiron Corp. 2005 10K); Ex. 19 (Sanofi's First RFAs); Ex. 20 (Sanofi's First Interrogatories).

Case: 1:13-cv-02086 Document #: 114 Filed: 03/29/13 Page 3 of 4 PageID #:2272

Menveo, Novartis's meningitis vaccine, shortly after it became available for purchase. *Supra* at 33. Perhaps a more logical conclusion is that Dr. Castro was swayed by Menveo's better efficacy data, or that she was tired of being taken advantage of by a monopolist (Sanofi) for years. In any event, it is safe to say that Sanofi has no evidence that Dr. Castro is suing at Novartis's behest because there could be no such evidence. Dr. Castro is not suing at anyone's behest but her own. In any event, if Sanofi wants to know why Dr. Castro has sued it, Sanofi need not engage in extraordinary discovery. Sanofi can simply ask her at her deposition.

*Second*, Sanofi argues that it should be entitled to discovery of communications between Plaintiffs' counsel and Navigant because Sanofi apparently believes that such discovery will somehow reveal a connection between Novartis and Plaintiffs' counsel with respect to this litigation. This theory appears to be based solely on the fact that Navigant performed a study of Sanofi's vaccines bundling scheme that was partially funded by Novartis (a fact disclosed in Navigant's published article). But what does Sanofi hope to show? That Novartis is biased because it would like to see Sanofi's illegal monopoly bundling practices that have impaired Novartis's ability to sell its vaccines be stopped? How could a foreclosed competitor be disinterested?

In any event, Sanofi's far-fetched tale is not relevant to any of the issues in this case: whether Sanofi violated the antitrust laws; whether Plaintiffs were injured and suffered damages; or, with respect to the Counterclaim, whether Plaintiffs and the PBGs formed an illegal buyer's cartel. It is entirely irrelevant that Plaintiffs' counsel have previously worked with Dr. Singer; that some of Plaintiffs' counsel (or lawyers in their firms but not working on the case) have preexisting relationships with legal advocacy groups, such as the American Antitrust Institute ("AAI") or Citizens for Responsibility and Ethics in Washington ("CREW") that are concerned with anticompetitive activity such as Sanofi's bundling;[37] or whether Novartis is also motivated to take action against Sanofi for Sanofi's anticompetitive behavior. In any case, as Sanofi concedes, all of these points are in the public record, including Dr. Singer's disclosure in his published article discussing Sanofi's bundling practices that his research was supported in part by Novartis.

Moreover, Sanofi asserts that discovering, through the use of a privilege log, when Plaintiffs' lawyers communicated with their consulting experts will somehow enable Sanofi to impeach the credibility of Novartis (a third party) and one of the named Plaintiffs. Yet the point Sanofi seems to want to make—*i.e.*, that Novartis (a foreclosed competitor) and one of the

---

[37] Daniel Berger, a managing shareholder of Berger & Montague, resigned as a board member of CREW in January 2011 and was inactive for most of 2010. He has no knowledge of, involvement with, or documents relating to the letter written by CREW regarding Sanofi's anticompetitive practices. But, of course, none of that is relevant in any way to the claims in this case.

39

will know whether the prices through the PBG contracts are lower than other Sanofi's list prices. In short, profitability information is in no way relevant to the Counterclaim.

      In short, beyond the facile argument that Plaintiffs' mere allegation that Plaintiffs would be at a competitive disadvantage if they paid penalty prices "opened the door" to downstream discovery, Sanofi has made no legitimate attempt to tie this discovery to any "claim or defense at issue" in this case, and thus, Sanofi's request for this discovery should be rejected.

Dated: November 2, 2012                                                                 Respectfully submitted,

| | |
|---|---|
| /s/ Ryan P. Blaney | /s/ Peter S. Pearlman |
| Ryan P. Blaney | Peter S. Pearlman |
| PROSKAUER ROSE LLP | COHN LIFLAND PEARLMAN |
| 1001 Pennsylvania Ave., N.W. | HERRMANN & KNOPF, LLP |
| Washington, DC 20004 | Park 80 Plaza West-One |
| T: (202) 416-5844 | 250 Pehle Ave., Suite 401 |
| F: (202) 416-6900 | Saddle Brook, NJ 07663 |
| E: rblaneyy@proskauer.com | T: 201-845-9600 |
| | F: 201-845-9423 |
| *Attorney for Defendant-Counterclaim Plaintiff Sanofi Pasteur Inc.* | E: psp@njlawfirm.com |
| | *Attorney for Plaintiffs-Counterclaim Defendants* |