**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ADRIANA M. CASTRO, M.D., P.A. and ) | |
| SUGARTOWN PEDIATRICS, LLC, *et al.*, ) | |
| on behalf of themselves and all others similarly ) | |
| situated, ) | |
| Plaintiffs**,** ) | |
| ) | Case No. 13-cv-2086 |
| ) | |
| v. ) | Honorable John J. Tharp, Jr. |
| ) | |
| SANOFI PASTEUR INC., ) | |
| ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR RECONSIDERATION, OR IN THE ALTERNATIVE, FOR CLARIFICATION**

By Minute Entry dated April 9, 2013, this Court modified Sanofi's subpoena directed to

Navigant Economics, Inc. ("Navigant"), a third party *non-testimonial consultant* to Plaintiffs'

counsel, "to seek documents only up to the date on which an attorney-client relationship was

established between Dr. Castro and Berger & Montague." *Castro, et al. v. Sanofi Pasteur Inc.*,

No. 13-cv-2086, Doc. No. 18 (Apr. 9, 2013) (the "Order"). Plaintiffs respectfully request that

the Order be modified in two minor—but substantively and procedurally important—respects.[1]

*First*, Plaintiffs request that the phrase "between Dr. Castro and Berger & Montague" in

the Order be changed to "between Plaintiffs' counsel and any entity with whom Plaintiffs'

counsel had an attorney-client relationship on whose behalf Plaintiffs' counsel was investigating

the antitrust claims ultimately brought against Sanofi Pasteur Inc." This change is warranted

---

[1] On November 10, 2013, the Court granted Plaintiffs' leave to seek reconsideration of the Order. *See* Doc. No. 19. Plaintiffs thank the Court for granting leave to seek reconsideration. While Plaintiffs continue to believe that Sanofi's document requests seek irrelevant evidence, Plaintiffs take this opportunity to seek minor modifications to the Court's Order that will protect the work product of Plaintiffs' counsel and their long-time consultants—economists at Navigant.

because the work-product protection attaches, at the very least, when an attorney-client relationship is formed with any client on whose behalf an attorney is investigating claims in anticipation of litigation. Whether the client ultimately brought the claims under investigation or is a party to a case is not a legally relevant factor.

*Second*, Plaintiffs request that the Order be clarified to exclude from discovery all documents or portions of documents—regardless of when they were created—that contain pure attorney or consultant opinion work product, such as, *e.g*., emails reflecting an attorney's questions to an economic consultant about the economic theory underlying Plaintiffs' claims and the consultant's answers to those substantive economic questions. Even assuming *arguendo* that Sanofi's conspiracy theory is accurate and relevant—and Plaintiffs dispute that—documents reflecting the mental impressions of attorneys and their non-testimonial consultants bear *no relevance* to Sanofi's theory, are not evidence of any issue, and are not likely to lead to the discovery of admissible evidence regarding any relevant issue.

Plaintiffs submit a proposed order with this motion reflecting Plaintiffs' requested modifications to the Court's April 9 Order.

# I. ARGUMENT

## A. The Court Has Discretion To Clarify Its Order.

Pursuant to Federal Rule of Civil Procedure 54(b) and the common law, this Court has inherent discretion to reconsider interlocutory rulings because such orders may be revised at any time before the Court enters a final judgment. *See Sims v. EGA Prods., Inc*., 475 F.3d 865, 870 (7th Cir.2007) (Cudahy, J. concurring) ("nonfinal orders are generally modifiable") (citing FED. R. CIV. P. 54(b)); *Mitchell v. ICG Industries*, 842 F. Supp. 2d 1080, 1082 (N.D. Ill. 2012) ("every order short of a final decree is subject to reopening at the discretion of the district

judge"); *PB Amoco Chem. v. Flint Hills Res., LLC*, 489 F. Supp. 2d 853, 856 (N.D. Ill. 2007) ("A motion to reconsider is an interlocutory order permissible within the inherent authority of the district court, the common law, and/or under Federal Rule of Civil Procedure 54(b)."). The transcript of proceedings with respect to the Court's April 9 Order (including, in particular, issuance of a modified subpoena and the possibility of a privilege log and *in camera* review in response, as well as the Court's subsequent order granting Plaintiffs leave to file a motion to reconsider) appears to confirm that the Court's ruling was interlocutory and not a final decree in this matter and therefore may be revised and/or clarified in the Court's discretion.

"Whether to grant a motion for reconsideration is 'entrusted to the sound judgment of the district court.'" *Morningware, Inc. v. Hearthware Home Prods., Inc.*, No. 09-4348, 2011 WL 1376920, at *2 (N.D. Ill. Apr. 12, 2011) (St. Eve, J.) (quoting *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996)). Under Seventh Circuit precedent, a motion to reconsider should be granted when one of the following has occurred: (1) the Court has misunderstood a party; (2) the Court made a decision outside the adversarial issues presented by the parties; (3) the Court has made "an error not of reasoning but of apprehension"; or (4) there is a controlling or significant change in the law or facts since the submission of the issue to the Court. *See PB Amoco*, 489 F. Supp. 2d at 856 (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)). Plaintiffs believe, respectfully, that the Court's April 9 Order reflects a misunderstanding of the attorney-client relationships relevant to the applicable work-product protection, as well as a misunderstanding of the nature of the documents subject to discovery, and consequently, Plaintiffs seek reconsideration and/or clarification of the April 9 Order.

## B. Work-Product Protections Should Apply Regardless of "Party" Status.

The Court's April 9 Order recognized that work-product protection attaches to

communications between Plaintiffs' counsel and Navigant after an attorney-client relationship was formed in the underlying *Castro* litigation.[2]  *See* Transcript, 13 C 2086, at 4:15-17 (Apr. 9, 2013) ("Apr. 9 Tr.") ("I think the proper date is the date of the creation of the attorney-client relationship, not the filing of the complaint itself.").  But the Court's Order, as written, focuses on the date Berger & Montague formed an attorney-client relationship with Dr. Castro, one of three named Plaintiffs in the *Castro* litigation.  Plaintiffs respectfully submit that the Court's Order be clarified to permit a broader—and legally correct—recognition of work-product protection.[3]

As an initial matter, Dr. Castro is not the only client on whose behalf Plaintiffs' counsel was communicating with Navigant as part of its investigation of possible antitrust claims against Sanofi, nor was Berger & Montague the only firm involved in conducting the pre-suit investigation.  Indeed, there are two additional named plaintiffs (Sugartown Pediatrics, LLC, and Marquez & Bengochea, M.D., P.A.), and other firms (in addition to Berger & Montague) involved in investigating the claims that gave rise to the litigation.  Since the Court recognized

---

[2] *Adriana M. Castro, M.D., P.A., et al. v. Sanofi Pasteur Inc.*, No. 11-cv-07178 (JLL) (MAH) (D.N.J.).

[3] Plaintiffs note that Sanofi's citations do not support the assertion that there must be an attorney-client relationship before the work-product protection attaches.  Sanofi leans heavily on a misquoted passage from *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 484 (E.D. Pa. 2005), in arguing that work-product privilege under 26(b)(3) does not attach unless a document is prepared for a "particular party, not the world in general."  Sanofi fails to mention, however, that the quoted passage is a misquote of a case from this District—*McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 259 (N.D. Ill. 2000)—in which the *McCook* court wrote: "The articulable claims likely to lead to litigation must pertain to this particular **opposing party**, not the world in general."  *McCook*, 192 F.R.D. at 261 (citing *International Ins. Co. v. Lloyd's of London*, No. 88-9838, 1990 WL 205461, at *4 (N.D. Ill. 1990) (Lindberg, J.)).  The omission of the word "opposing" completely changes the meaning of the quote, and *McCook* is clear that what is required is anticipated litigation *against* a particular party, not *on behalf of* a particular party.  Plaintiffs' counsel did not undertake an investigation into anticompetitive bundling practices in the pharmaceutical industry in general.  Plaintiffs' counsel specifically investigated **Sanofi's** anticompetitive bundling practices.  Indeed, none of Sanofi's cases holds that there must be a specific attorney-client relationship before the work-product protection attaches.

4

that the work-product privilege is applicable to communications between Plaintiffs' counsel and non-testifying experts at Navigant after an attorney-client relationship was formed with Dr. Castro, it follows that the Order should, at a minimum, be clarified to cover documents created after the date an attorney-client relationship was established between any party and any Plaintiffs' counsel investigating the case on the party's behalf.

More broadly, however, the work-product doctrine does not require that the client be a party to the underlying litigation in order for the protections to apply, as long as the documents were created when "some articulable claim, *likely* to lead to litigation, has arisen." *Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2009). Indeed, "[t]he work-product privilege protects documents prepared in anticipation of litigation ***regardless of whether the anticipated litigation ever occurs***." *National Jockey Club v. Ganassi*, No. 04-CV-3743, 2006 WL 733549, at *1 (N.D. Ill. 2006) (Nolan, M.J.) (quoting *In re Sealed Case*, 146 F.3d 881, 888 (D.C. Cir. 1998)).[4] Thus, while the Court correctly recognized that work-product privilege can attach prior to the start of litigation,[5] the investigation of a claim need not lead to litigation, and thus, the client need not become a party to any litigation for the work-product protection to attach. Consequently, even if Plaintiffs' counsel had never brought a lawsuit against Sanofi on behalf of a client, the work product created while Plaintiffs' counsel was conducting an investigation on behalf of clients would still be protected.

---

[4] *See also United States v. Adlman*, 134 F.3d 1194, 1198-99 (2d Cir. 1998) ("*Adlman II*") (interpreting the reference in Rule 26(b)(3) to documents "prepared in anticipation of litigation" to subsume a different and broader category of materials than would be encompassed by the phrase 'or for trial'); *SEC v. Nacchio*, No. 05-480, 2007 WL 219966, at *8 (D. Colo. 2007) (Shaffer, M.J.) (work-product protection may apply to the pre-litigation fact finding process regardless of whether litigation ever occurs).

[5] *See* Apr. 9 Tr. at 4:17-19 ("Obviously there could be work product in anticipation of filing the complaint, but you got to have a client, so I think that's the operative date.").

This is significant here because Berger & Montague and its co-counsel investigated this case on behalf of certain entities that did not ultimately become named plaintiffs, and these attorney-client relationships predate the relationships established with the named Plaintiffs, including with Dr. Castro. It would be legally improper to deny work-product protection to documents related to an investigation undertaken by any Plaintiffs' counsel on behalf of those entities. Consequently, Plaintiffs respectfully request that the Court's Order be clarified to protect work product generated on behalf of all entities on whose behalf any Plaintiffs' counsel undertook an investigation into Sanofi's anticompetitive practices. For that reason, Plaintiffs respectfully suggest the Order be modified to change "between Dr. Castro and Berger & Montague" to "between Plaintiffs' counsel and an entity with whom Plaintiffs' counsel had an attorney-client relationship on whose behalf Plaintiffs' counsel was investigating the antitrust claims ultimately brought against Sanofi Pasteur Inc."

**C.     Attorney and Consultant Mental Impressions Should Not Be Discoverable.**

Plaintiffs also respectfully request that the Court clarify its Order to exclude from the permissible scope of Sanofi's subpoena all opinion work product, including Plaintiffs' counsel's or Navigant consulting economists' mental impressions regarding legal theories or economic analyses relating to the underlying litigation. These documents should be excluded from discovery because they are not relevant, and moreover, discovery of such documents will unfairly prejudice Plaintiffs and contravene long-standing authority that the mental impressions of an adversary are not discoverable absent exceptional circumstances.

*First*, documents reflecting counsel's or their consultant's mental impressions (or both) *are not evidence*, let alone evidence of any relevant fact, nor are they likely to lead to the discovery of admissible evidence. According to Sanofi's conspiracy theory, Navigant is the hub

of a vast conspiracy among Novartis, one named Plaintiff (Dr. Castro), Plaintiffs' counsel, and various public interest legal advocacy groups. Sanofi thus asserts that its subpoena is directed at uncovering evidence that Novartis is behind the underlying litigation, and more specifically, that Novartis brought Dr. Castro into this litigation. Sanofi asserts that this information is relevant because it will bear on Dr. Castro's motivations for bringing the lawsuit.

To be clear, Novartis had nothing to do with Dr. Castro bringing this lawsuit, and Plaintiffs note that this fact has been made clear to Sanofi on multiple occasions. But putting that aside, Sanofi's theory does not justify discovery of documents in Navigant's possession that are pure opinion work product and reflect pre-suit discussions between Plaintiffs' counsel and Navigant regarding the economic theories underlying Plaintiffs' antitrust claims.[6] For example, how would the mental impressions of Plaintiffs' counsel regarding antitrust economics bear on whether Dr. Castro is acting at Novartis's behest? The answer, of course, is that Plaintiffs' counsel and Navigant's mental impressions are not evidence of any fact issue purportedly raised by Sanofi's conspiracy theory. *Cf. Sloan Valve Co. v. Zurn Indus.*, No. 10-204, 2012 WL 5499412, at *3 (N.D. Ill. Nov. 13, 2012) (denying discovery of consulting expert because "how [plaintiff], its consultants, and its attorneys came to the conclusions [regarding defendant liability] is not relevant to any party's claim or defense"). Sanofi is free to ask Dr. Castro in a deposition whether Novartis had any role in bringing her into this lawsuit, but Sanofi's theory provides no legitimate basis to require Plaintiffs' counsel or Navigant to turn over work product reflecting pre-filing mental impressions on substantive legal and economic issues.

---

[6] Plaintiffs submitted a copy of their privilege log that reflects communications between Plaintiffs' counsel and Navigant in connection with the motion to quash. *See* Exhibit D to Memorandum in Support of Plaintiffs' Motion to Quash Subpoena, or in the Alternative, for a Protective Order, Doc. No. 4 (Mar. 18, 2013). As is clear from that log, all of the communications reflect pre-suit investigation of the *Castro* litigation, and many of them are pure opinion work product reflecting discussions between Plaintiffs' counsel and Navigant.

*Second*, allowing discovery of Plaintiffs' counsel's and Navigant's mental impressions would undermine the policies and protections underlying the work-product doctrine and Rule 26(b)(4)(D), which prohibits discovery into the facts known and opinions held by consulting experts.

Under the work-product doctrine, "[s]uffice to say immunity from discovery for an attorney's mental impressions, conclusions, opinions, or legal theories is absolute or nearly absolute." *McCook Metals*, 192 F.R.D. at 259. For this reason, "Rule 26 accords special protection to work product revealing the attorney's mental processes," *Upjohn v. U.S.*, 449 U.S. 383, 400 (1981), and "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). Indeed, Rule 26(b)(3) "is intended to ratify the principles that 'each side's informal evaluation of the case should be protected, that each side should be encouraged to prepare independently, and one side should not automatically have the benefit of the detailed preparatory work of the other side." *Adlman II*, 134 F.3d at 1199. *See also United States v. Adlman*, 68 F.3d 1495, 1501 (2d Cir. 1995) ("*Adlman I*") (purpose of the work-product doctrine "is to establish a zone of privacy for strategic litigation planning and to prevent one party from piggybacking on the adversary's preparation").

"Unlike the work product doctrine, Rule 26(a)(4)(D) does not only prohibit discovery of mental impressions, it also protects 'facts known or opinions held' by a consulting expert as well." *Sloan Valve*, 2012 WL 5499412, at *3 (quoting FED. R. CIV. P. 26(b)(4)(D)). This rule is intended to foster and protect efforts by counsel to fully develop case theory and strategy with the help of consulting experts. Thus Rule 26 prohibits—and courts prevent discovery into—communications between counsel and consultants because "[a]llowing routine discovery as to

[consulting experts] would tend to deter thorough preparation of the case," which "may be particularly true with respect to nontestifying experts, with whom counsel may, absent the threat of discovery, feel free to discuss strategy and trial preparation." Wright, Miller, *et al*., 8A FEDERAL PRACTICE & PROCEDURE § 2032 (3d ed.); *see also United States v. Am. Tel. and Tel. Co.*, 642 F.2d 1285, 1300 (D.C. Cir. 1981) (central purpose of the work-product protection, namely, "encouraging the fullest preparation without fear of access by adversaries").

The *Castro* litigation involves numerous issues at the crossroads of economics and antitrust law. Plaintiffs' counsel prudently—and at their own expense—consulted with expert economists as part of an extensive investigation conducted prior to bringing this case on behalf of clients and a proposed class of purchasers injured by Sanofi's anticompetitive practices.[7] Sanofi's subpoena seeks documents that contain the mental impressions of Plaintiffs' counsel and Plaintiffs' consultants, documents that (as discussed above) bear no relevance to Sanofi's purported conspiracy theory. To allow Sanofi to essentially rifle through Plaintiffs' counsel's and Navigant's mental impressions regarding the case would provide Sanofi an unfair litigation advantage and would potentially chill the very type of investigative efforts the work-product doctrine and Rule 26 were intended to foster and protect.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court clarify its April 9, 2013 Minute Entry to reflect the date on which any attorney-client relationship was formed between any client and any member of Plaintiffs' counsel and also to protect against disclosure of Plaintiffs' counsel's and non-testifying consultant Navigant's opinion work product.

---

[7] Plaintiffs will provide examples of these documents to the Court for *in camera* inspection, if the Court so wishes, to show that the documents Plaintiffs seek to protect are indeed counsel's and Navigant's mental impressions of substantive economic issues.

Dated: April 15, 2013

/s/ Scott F. Hessell
Scott F. Hessell
**SPERLING & SLATER, P.C.**
55 West Monroe Street, Suite 3200
Chicago, IL 60603
Tel: (312) 641-3200
Fax: (312) 641-6492
shessell@sperling-law.com

Linda P. Nussbaum
Peter A. Barile III
Bradley J. Demuth
**GRANT & EISENHOFER, P.A.**
485 Lexington Avenue
New York, NY 10017
Tel: (646) 722-8504
Fax: (646) 722-8501
lnussbaum@gelaw.com
pbarile@gelaw.com
bdemuth@gelaw.com

Eric C. Cramer
Daniel J. Walker
Zachary D. Caplan
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
ecramer@bm.net
dwalker@bm.net
zcaplan@bm.net

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 15, 2013, I caused to be served, via the Court's Electronic

Filing System, a copy of the foregoing document on counsel of record for the Defendant

Dated: April 15, 2013                          /s/ Scott F. Hessell
                                               Scott F. Hessell