**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ADRIANA M. CASTRO AND | ) | |
| SUGARTOWN PEDIATRICS, LLC | ) | |
| | ) | |
| Plaintiffs, | ) | No. 13 C 2086 |
| | ) | |
| v. | ) | |
| | ) | Judge John J. Tharp, Jr. |
| SANOFI PASTEUR INC. | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

On April 9, 2013, the Court entered an order on the motion of Plaintiffs Castro and Sugartown Pediatrics, LLC,[1] to quash a subpoena issued by Defendant Sanofi Pasteur Inc. ("Sanofi"). The subpoena sought the production of documents from Navigant Consulting, Inc., pertaining to its communications with Berger & Montague ("B&M"), Castro's counsel. Plaintiffs' objections to the subpoena centered on FRCP 26(b)(3) and the work product doctrine. Sanofi maintains that these documents are relevant because they show that the Plaintiffs' antitrust claim—that Sanofi has foreclosed competitor Novartis from the market—was manufactured by Novartis, with the assistance of Navigant and B&M, as a means of limiting price competition.[2]

---

[1] Plaintiffs indicate in their motion for reconsideration that there is a third named plaintiff in this case, Marquez & Bengochea, M.D., P.A. The motion to quash did not, however, refer to Marquez & Bengochea. For simplicity, unless specific reference to Sugartown Pediatrics or Marquez & Bengochea is required, the Court will refer only to plaintiff Castro.

[2] The following brief description of Castro's claims is taken from the opinion of the District Judge presiding over Castro's lawsuit on Sanofi's motion for entry of final judgment or leave to file interlocutory appeal of dismissal of counterclaim (Dkt. 169, 11 C 7178, D.N.J., at 2) (internal record citations omitted):

The Court denied the motion to quash, holding that responsive documents in Navigant's possession that pre-date the creation of an attorney-client relationship between Castro and B&M do not qualify for work product protection because, by definition, they could not have been prepared in anticipation of litigation at a point when Castro was not yet B&M's client. The Court therefore directed that Sanofi modify the subpoena to cover only otherwise responsive documents created before Castro retained B&M.[3]

Due to confusion arising because Castro's motion had not been properly noticed as required by Local Rule 5.3, counsel from B&M were not present when the Court ruled on the motion to quash the subpoena. The Court therefore invited Castro to submit a motion for reconsideration in the event that she objected to the Court's order. Castro has submitted that motion, to which Sanofi has responded.

Castro seeks two modifications to the Court's order. First, she asks that the order be modified to preclude discovery of documents created before any other client retained B&M to represent them in connection with potential litigation against Sanofi. B&M represents that "Dr.

---

> In the FAC, Plaintiffs allege that Sanofi used its market power across all relevant markets to impose bundled-pricing contracts on PBGs [Physician Buying Groups] as a means of stifling competition from Sanofi's rivals. Thus, under Sanofi's "exclusionary contracts with PBGs," buyers are allegedly penalized for purchasing any vaccine that Sanofi offers from one of Sanofi's competitors. In their FAC, Plaintiffs allege two causes of action: (1) monopolization of the meningococcal vaccine market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, and (2) anti-competitive agreements in unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

[3] The same reasoning would apply with respect to B&M's retention of Sugartown Pediatrics and Marquez & Bengochea, but the defendants assert, and B&M has not disputed, that both of these plaintiffs retained B&M after Castro had done so. Thus, the dates on which those plaintiffs retained B&M are not relevant to the scope of the subpoena given the earlier limitation imposed with respect to the date of Castro's retention of B&M.

Castro is not the only client on whose behalf Plaintiffs' counsel was communicating with Navigant as part of its investigation of possible antitrust claims against Sanofi, nor was Berger & Montague the only firm involved in conducting the pre-suit investigation." Dkt. 22 at 4. Sanofi argues, however, that Rule 26(b)(3) applies only to documents "prepared in anticipation of litigation or for trial *by or for another party* or its representatives." (emphasis added).

To support its reading, Sanofi cites 8 C. WRIGHT, A. MILLER, & R. MARCUS, FED. PRACTICE & PROCEDURE § 2024 (3d ed.) ("Wright & Miller"), which states that "[d]ocuments prepared for one who is not a party to the present suit are wholly unprotected by Rule 26(b)(3) even though the person may be a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the present suit." *Id.* at 523. But the treatise goes on to observe that "[s]uch a result would be intolerable," and suggests, albeit without explanation or citation to any authority, that "courts need not be confined by a literal reading of Rule 26(b)(3)." *Id.* at 524. The treatise goes on to also suggest that the limitation imposed by the text of the rule may be avoided by entry of a protective order under Rule 26(c)(1).

A problem presented by reading the rule to apply only to parties in litigation is that it is inconsistent with a traditional tenet of work product doctrine, namely the rule that work product protection is not contingent on whether the anticipated litigation actually materializes. *See, e.g., In re Sealed Case,* 146 F.3d 881, 888 (D.C. Cir. 1998); *National Jockey Club v. Ganassi*, No. 04 C 3743, 2006 WL 733549, *1 (N.D. Ill. Mar. 22, 2006); Wright & Miller, § 2024 at 523 (noting rule). The text of Rule 26(b)(3) undermines this rule because documents that constitute work product—that is, that were prepared by or for an attorney in anticipation of litigation—are not protected from discovery unless litigation actually ensues; otherwise, the attorney's client would never become a "party" to whom the rule applies. Neither Wright & Miller, nor cases holding

that work product protection may only be invoked by a party to the litigation, such as *LG Elecs., Inc. v. Motorola, Inc.*, No. 10 C 3179, 2010 WL 4513722, *3 (N.D. Ill. Nov. 2, 2010), nor the Advisory Committee Notes to Rule 26, address the inconsistency between the text of Rule 26(b)(3) and the concept that some litigation, at one point reasonably anticipated to occur, may nevertheless be resolved short of the courthouse door.

This is arguably a problematic approach to application of the work product doctrine, conditioning as it does the protection of what would otherwise constitute attorney work product on the inability of disputants to resolve their differences without resort to litigation.[4] Nevertheless, it is the approach that the Supreme Court, and Congress, have taken. "Rule 26(b)(3) codifies the work-product doctrine," *Upjohn Co. v. United States,* 449 U.S. 383, 398 (1981), and governs "the extent to which trial preparation materials are discoverable in federal courts," *F.T.C. v. Grolier Inc.*, 462 U.S. 19, 25 (1983). To the extent that the federal rule is inconsistent with the common law rule that preceded it, the reasonable implication, absent contrary evidence, is that the rule was not intended to incorporate that aspect of the doctrine as it existed; Rule 26(b)(3) should not be construed to preserve the common law. "There is no place in the federal civil procedural system for the proposition that rules having the force of statute, though in derogation of the common law, are to be strictly construed." *G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.,* 871 F.2d 648, 652 (7th Cir. 1989). The Court therefore concludes that the rule means what it says. By its terms, Rule 26(b)(3) applies only to "parties" to the litigation, and therefore Castro's request to modify the Court's prior order to reflect the date that non-party clients retained B&M to investigate claims against Sanofi is denied.

---

[4] One might argue, for example, that the rule creates a disincentive to settlement and diligent pre-suit investigation since it affords no protection to materials created in anticipation of litigation unless a law suit is actually filed.

The second modification Castro seeks is to exclude from the scope of the subpoena "all opinion work product, including Plaintiffs' counsel's or Navigant consulting economists' mental impressions regarding legal theories or economic analyses relating to the underlying litigation." Dkt. 22 at 6. Castro's objections are two: that materials reflecting its, or Navigant's, opinions on potential antitrust claims are not relevant; and that such work product is protected from disclosure by the work product doctrine. Neither argument is persuasive. Taking the latter point first, the (now) simple response to Castro's objection to the discovery of these materials as "work product" is that they are not "work product" if they were not created (by a party in this case) in anticipation of litigation, and they cannot have been prepared in anticipation of litigation if B&M had yet to be retained. Putting aside the complexity presented by the question of Rule 26(b)(3)'s applicability to non-party clients, the work product doctrine simply does not extend to an attorney's communications about legal issues in a law suit that was only conceptual.

Relevance might be the more fitting objection to lodge to discovery seeking such communications, but given Sanofi's arguments about a conspiracy between Novartis, Navigant, and B&M, communications between B&M and Navigant prior to Castro's retention of B&M may well be relevant to both the substance and credibility of Castro's claims of foreclosure (and the Court notes in this regard that the District Court presiding over the case has evidently not circumscribed Sanofi's ability to seek discovery relating to the alleged Novartis-Navigant-B&M conspiracy on the grounds of relevance). In the context of this case, where there is a colorable claim that such pre-suit, non-work product documents are relevant, discovery is appropriate. Sanofi does not seek the materials so that its counsel can "piggy back" off of B&M's and Navigant's work, an effort that would implicate a core interest served by Rule 26(b)(3); rather, it maintains that the documents have significance independent of their legal analyses because they

may shed light on the nature and course of the relationship between the purported conspirators. Castro has, in a supplemental filing, provided to the Court *in camera* a sample of documents that purportedly "typify the type of materials reflecting mental impressions [that are] not relevant." And unquestionably, the documents do contain mental impressions and opinions of counsel and consultant. But review of the documents also makes clear that these are not "pure" opinion materials but rather reflect, as Sanofi maintains, the nature of the relationship and endeavor that B&M, Navigant, and Novartis were undertaking. So Castro's relevance objection is also unavailing.

This ruling does not, of course, preclude challenges to the use, or abuse, of discovery obtained by means of this subpoena. Any potential misuse of information obtained pursuant to this subpoena, or determination concerning its ultimate relevance and admissibility, can be addressed to the trial court down the road, in the specific context in which such issues may arise. For now it is enough to say that there is no basis to deny the discovery sought by the subpoena.

For the foregoing reasons, the Court denies Plaintiffs' motion for reconsideration.

Entered: April 19, 2013

John J. Tharp, Jr.
United States District Judge