**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ILLINOIS
NORTHERN DIVISION**

| | | |
|---|---|---|
| ADRIANA M. CASTRO, M.D., P.A. and SUGARTOWN PEDIATRICS, LLC, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civ. Action No. 13-cv-2086 |
| | | Honorable John J. Tharp, Jr. |
| Plaintiffs | | Magistrate Judge Susan E. Cox |
| v. | | ECF CASE |
| SANOFI PASTEUR INC., | | |
| Defendant. | | |

**OPPOSITION TO PLAINTIFFS' MOTION FOR A STAY AND REPLY TO
PLAINTIFFS' RESPONSE TO SANOFI'S MOTION TO ENFORCE**

As plaintiffs' six-week campaign to impede discovery of Navigant's documents nears its end in this Court, plaintiffs have launched a final salvo to delay the release of this information until it becomes too late to be of any use. The final chapter here presents the question of whether Sanofi may immediately access information the Court found, after *in camera* review, may be relevant to the critical issue of foreclosure, or whether Sanofi must wait until the Seventh Circuit (almost assuredly) affirms the challenged order, which may be too late.

The parties agree that the Court's inquiry should be guided by familiar factors: likelihood of success, irreparable harm, the balance of harms, and the public interest. In analyzing them, the Court should bear in mind Judge Posner's admonition that "the task for the district judge in deciding whether to grant" interim relief is to "try to avoid the error that is more costly in the circumstances." *Roland Machinery Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 388 (7th Cir. 1984). Application of the factors and doctrine to the instant facts compels the conclusion that the "extraordinary remedy" of a stay pending appeal is unwarranted.

On the merits, nothing plaintiffs have submitted suggests the Court's application of the plain meaning of Rule 26(b)(3) was erroneous. They do not challenge the legion of cases Sanofi cited in support of the Court's decision. They simply rehash arguments the Court, like many before it, has rightly rejected. The relevant harms therefore – to plaintiffs, Sanofi, and the public – should be considered from the vantage point that if a stay is *denied*, potential error costs are *low*, as the Court committed no error.

Even if the Seventh Circuit departs from its sister courts and reverses, the error costs are still low because plaintiffs make no particularized or cognizable showing of irreparable harm. They do not deny that the *parties* (Dr. Castro and Sugartown) lack a cognizable interest in *this dispute*, as the documents were not prepared on either's behalf. Nor do they deny that any *non-party*, by definition, lacks a cognizable interest in the underlying *case*. They argue instead that B&M (and perhaps a mystery client) will suffer irreparable harm if the Court orders disclosure before appellate review. This argument is foreclosed by the Supreme Court's decision in *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 105 (2009), which unanimously rejected the need for pre-disclosure appellate review of challenged privilege calls.

In contrast, if a stay issues, concrete costs will be imposed on Sanofi *and* the public. Plaintiffs *concede* that immediate disclosure will advance fact-finding in this case. This benefit will redound to the public's interest in the truth, and Sanofi's interest in defending itself from attack. Immediate disclosure will not, however, chill *any* current or future work product activities. Plaintiffs' pre-filing investigation is complete. Future activities will be governed by the Seventh Circuit's decision *on the merits*. Issuance of a stay will not impact those activities one way or the other.

Accordingly, Plaintiffs' motion should be denied, and Sanofi's motion should be granted.

I.     **THERE IS NO LIKELIHOOD OF SUCCESS ON APPEAL.**

In "the context of a stay pending appeal, where the applicant's arguments have *already been evaluated* on the [merits], the applicant must make a stronger threshold showing of likelihood of success to meet his burden." *In re Forty-Eight Insulations*, 115 F.3d 1294, 1301 (7th Cir. 1997). Plaintiffs have not carried this burden. Nothing in their motion suggests this Court's prior evaluation was flawed – they cite no controlling authority against it; no split among district courts in this Circuit; and no split among the Circuit Courts themselves.

The lack of controlling, or even persuasive, authority undermining this Court's ruling renders plaintiffs' likelihood of success *de minimis* in light of the substantial authority *favoring* this Court. The Sixth, Eighth, Ninth, and Eleventh Circuits (and many district courts) have addressed whether Rule 26(b)(3) protects non-party work product and concluded, like this Court, that the rule "means what it says" and does not extend to non-parties. Op. at 4; S. Mot. to Compel at 5-6. Plaintiffs' motion is *silent* as to *each* of these cases. It also provides no reason why the Seventh Circuit would depart from its sister circuits, or from its settled practice of applying the "plain meaning" rule of statutory construction. *See* S. Not. of Add'l Auth. at 3-4; *Pittway Corp. v. United States,* 102 F.3d 932, 936 (7th Cir. 1996) ("plain meaning of legislation should be conclusive").[1]

---

[1] Plaintiffs object to the Court's and Sanofi's citation to *FTC v. Grolier Inc.*, 462 U.S. 19, 25 (1983). Pls. Br. 7 n.6. They quibble that, notwithstanding *Grolier's* lengthy analysis of Rule 26(b)(3), *id.* at 24-26, the Court held the subject documents protected by a FOIA exemption. This distinction is beside the point. The Circuit Courts considered *Grolier's* statement that "the literal language of [Rule 26(b)(3)] protects materials … prepared **by or for a party**," and this Court quoted *Grolier's* statement that the Federal Rules govern "the extent to which trial preparation materials are discoverable in federal courts." *Id.* at 25. That this Court and others have quoted *Grolier's* discussion of the very rule in question only diminishes plaintiffs' likelihood of success.

Unless otherwise indicated, all emphasis is added and internal citations and quotations omitted.

3

Instead, plaintiffs' likelihood of success hinges on its attempt to distinguish this Court's *quotation* from *Upjohn Co. v. United States*, 449 U.S. 383, 398 (1981), that "Rule 26(b)(3) codifies the work-product doctrine." They contend that the Supreme Court did not mean what it said, and if it did, what it said was "dicta." This argument is as strained as it sounds. *Upjohn* presented a straightforward application of Rule 26(b)(3): a **party** (Upjohn) maintained that **its** attorney's internal interview notes were attorney-client communications and opinion work product. *Upjohn*, 449 U.S. at 386-89. Far from "dicta," the Court *applied* Rule 26(b)(3), not a common law version of it. Nothing in *Upjohn* suggests that Rule 26(b)'s plain language may be disregarded.

Nor did *Upjohn* somehow open the door to the application of "common law" work product protection for non-party documents. To argue otherwise, plaintiffs note that some courts apply the common law to situations – like *criminal* grand jury subpoenas or *intangible* things – not governed by the Federal Rules. But as Sanofi has explained, cases "cited for the principle that work product protection extends beyond Rule 26(b)(3) address[] **gaps** in" Rule 26(b)(3) that are not addressed expressly by the rule's terms. *See* S. Not. of Auth. at 2-3 (discussing "intangible" work product, depositions, criminal proceedings, and other scenarios not contemplated by Rule 26(b)). As to non-party documents for which protection is sought, there are no such gaps. *Id.*

Plaintiffs' other merits arguments require only minimal discussion. In their "Factual Background" section (not their argument section), plaintiffs re-argue the relevance of the subject documents. Pls. Br. 3. This Court has reviewed a sampling of them (hand-picked by plaintiffs) and stated that they "may well be relevant to both the substance and credibility of [plaintiff]

4

Castro's claims of foreclosure," a central issue in this litigation. Op. at 5. Plaintiffs cite no cases suggesting the Court was wrong as a matter of law.

They also claim this Court erred because "when a court orders disclosure of work product it must still protect against disclosure of mental impressions." Pls. Br. 6 (citing Fed. R. Civ. P. 26(b)(3)(B)). The provision of Rule 26 they invoke, however, is triggered only *after* (i) a court finds the subject materials are <u>work product</u>, that is, "documents … prepared in anticipation of litigation or for trial by or for another *party* or its representative"; and (ii) a substantial need is shown. The Rule does not apply where, as here, the documents are *non*-work product under Rule 26(b)(3)(A).

## II. PLAINTIFFS HAVE MADE NO SHOWING OF IRREPARABLE HARM.

In the Seventh Circuit, "the less likely it is the plaintiff will succeed" on appeal, "the more the balance need weigh towards its side" on irreparable harm. *See Sofinet v. INS*, 188 F.3d 703, 707 (7th Cir. 1999). In light of the merits, plaintiffs bear a heavy burden to show that *pre-appellate* disclosure would cause them irreparable harm.

Plaintiffs do not satisfy this burden because they make no *particularized* showing of harm. They do not claim, for example, that Dr. Castro will suffer *any* harm. Nor can they, since she lacks a protectable interest in documents that were prepared before her involvement in the case. Nor do they identify any financial or other concrete harm that pre-appellate disclosure would inflict on the undisclosed client for whom the documents were supposedly created. In fact, plaintiffs disclaim such a showing, contending there is "no requirement that [B&M's] clients … demonstrate that they would be harmed by disclosure." *See* P. Br. 11.

Yet courts have "repeatedly held that a *'speculative'* injury does not constitute an irreparable injury justifying injunctive relief." *Singer Co. v. P. R. Mallory & Co.,* 671 F.2d 232,

5

235 (7th Cir. 1982). What else could one call an undisclosed injury to an undisclosed client or its counsel?[2]

In lieu of a concrete showing of irreparable harm, plaintiffs raise a discredited **legal** argument. They assert that pre-appellate disclosure *itself* inflicts irreparable harm on B&M as a matter – not of fact – but of law. This assertion contradicts the Supreme Court's controlling decision in *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009). There, the district court ordered disclosure of arguably privileged information, and an immediate appeal was sought. The appellant – unsuccessfully – argued that it should be permitted to appeal *before disclosure* because the privilege "provides a right not to disclose the privileged information in the first place." *Id.* at 109. The Supreme Court unanimously rejected this argument, disagreeing that "the right to maintain attorney-client confidences … is **irreparably destroyed** absent immediate appeal of adverse privilege rulings." *Id.* at 108.

In doing so, the Court noted first that post-disclosure appellate review sufficed because appellate courts "can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings." *Id.* at 109. The key question, the Court explained, is not whether there is a personal "right" not to disclose privileged information "in the first place," but whether pre-appellate disclosure would further or frustrate the administration of justice. *Id.* Because post-disclosure appellate review does "not meaningfully reduce the *ex ante*

---

[2] The *unspecified* harm to B&M does not constitute cognizable irreparable injury. Plaintiffs' contrary argument confuses standing with the harm inquiry. While an attorney may have standing to assert work product privilege, the disclosure of such work product does not "irreparably injure" the attorney because it does not irreparably chill his or her ability to serve its clients in this or in future cases. *See Coastal States Gas Corp. v. Dep't of* Energy, 617 F.2d 854, 864 (D.C. Cir. 1980) ("The purpose of the [work product] privilege … is not to protect any interest of the attorney, who is no more entitled to privacy or protection than any other person, but to protect the adversary trial process itself").

6

incentives for full and frank consultations between clients and counsel," the Court concluded the extraordinary remedy of pre-disclosure appellate review was **not required**. *Id.*[3]

If there was no irreparable harm from pre-appellate disclosure in *Mohawk*, there is none here. Indeed, in the years following *Mohawk*, courts routinely deny stays pending appeal and require *pre-appellate disclosure* of arguably privileged information. *See In re Ingram*, 2012 WL 6840538, at *3-4 (E.D. La. 2012) (stay denied; "remedies exist that would lessen or eliminate the harm," like "return or destruction of the documents."); *United States v. Trenk,* 2009 WL 1298420 (D.N.J. 2009) (stay denied on similar grounds); *Park v. Cas Enters., Inc.*, 2009 WL 5125670 (S.D. Cal. 2009) (denying stay); *Prof'ls Direct Ins. Co. v. Wiles, Boyle*, *et. al.*, 2008 WL 5378362 (S.D. Ohio 2008) (denying stay). Thus, plaintiffs cannot establish irreparable harm.[4]

### III. THE BALANCE OF HARM FAVORS DENYING THE STAY.

Since plaintiffs have not satisfied "the requisite showings on either" of the first two factors, this "[C]ourt's inquiry into the balance of harms is unnecessary," and the motion "should be denied without further analysis." *In re Forty-Eight*, 115 F.3d at 1300-01; *Green River Bottling Co. v. Green River Corp.*, 997 F.2d 359, 361 (7th Cir. 1993) (failure on core factors precludes stay). Nonetheless, this factor also favors denial of the stay.

---

[3] In *Mohawk*, the trial court issued the challenged order, while the challenged subpoena here issued from this Court. But these procedural differences are immaterial. While they may impact the *timing of an appeal* (plaintiffs need not await judgment on the underlying suit to appeal), they do not change the fact that *post-disclosure* appellate review can remedy an erroneous ruling. The case for pre-disclosure appellate review in *Mohawk* was in fact stronger than here, because here, plaintiffs may appeal now and obtain a pre-trial decision.

[4] Plaintiffs' brief is curiously devoid of post-*Mohawk* cases, or disclosure of its holding. It is, however, replete with cases **overruled** by *Mohawk* in relevant part. Specifically, each cited case (but one), like *Mohawk*, addressed the "collateral order doctrine," but held contrary to *Mohawk* that a pre-disclosure appellate review was required. *See* Pls. Br. 9-10 (citing *In re Sealed Case (Medical Records)*, 381 F.3d 1205, 1210 (D.C. Cir. 2004); *Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005); and *Smith v. BIC Corp.*, 869 F.2d 194, 199 (3d Cir. 1989)). The other case, *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 591 (3d Cir. 1984), involved similar consideration under the All Writs Act, and in light of its conclusion that "to delay review" in privilege cases "is to deny it altogether" it too probably does not survive *Mohawk*.

Sanofi has explained that further delay will prejudice its ability to defend itself in this lawsuit. S. Mot. to Compel at 7-8. Plaintiffs do not deny, if the Court grants their motion, that Sanofi may not obtain the Navigant documents in time to make use of them.[5]

*First*, plaintiffs advance two misguided arguments. *First*, they say Sanofi should content itself with documents on *other* issues from *other* sources. But they do not suggest that the Navigant documents are available from other sources. In fact, they are available only from B&M or Navigant, and plaintiffs have gone to extraordinary lengths to preclude discovery of them from either source. Nor do they argue that these documents shed no *new* light on the conspiracy between Novartis, Navigant, and B&M. Such an argument would run counter to this Court's finding that the documents concern the nature of the "relationship and endeavor that B&M, Navigant, and Novartis were undertaking." Op. at 6.

*Second*, plaintiffs argue that Sanofi would not be prejudiced because the documents are irrelevant. This is a rehash of the merits, which have been rejected time and again. Indeed, the Court in the underlying action has *permitted* discovery into this issue, and ordered a multi-day deposition of Novartis's conspirator-witness, Christian Lease. This Court also found after its review that the documents may be relevant to foreclosure, a central issue. Op. at 5. Thus, plaintiffs' contention that delay will impose no harm on Sanofi because its "conspiracy theory is legally irrelevant" should once more be rejected. Pls. Br. 12.

---

[5] For example, Sanofi is scheduled to take the deposition of Christian Lease on May 16th (next week). Mr. Lease served as Novartis' primary contact with Navigant during the events at issue, and was a focal point of what this Court described (after *in camera* review) as the "relationship and endeavor that B&M, Navigant, and Novartis were undertaking." Op. at 6. Depending on the Court's disposition of this motion and plaintiffs' and Navigants' subsequent courses of action, Sanofi may not have access to relevant documents at the time of Mr. Lease's deposition. This kind of prejudice only promises to continue so long as this dispute drags on.

8

**IV.     THE PUBLIC INTEREST FAVORS DENYING THE STAY.**

The public interest *strongly and unambiguously* favors denying a stay. Work product is not about the "private" interests of parties or their attorneys; it is about the public's interest in the administration of justice. Sanofi has explained that disclosure will advance judicial fact finding in *this* case without adversely impacting judicial fact finding in *future* cases.

In response, plaintiffs ***admit*** that disclosure will "promote fact finding" in this case. Pls. Br. 13. That promotion itself will advance the public interest, as the Navigant documents may impact how vaccines administered to millions of children each year are sold in this nation. Plaintiffs also admit that immediate disclosure will *not* adversely impact the parties' – past, present, or future – trial preparation activities *in this case. See* Pls. Br. 12 ("[a]llowing discovery of work product will *never* discourage its creation once it has already been created."). Denying the stay, therefore, will unambiguously advance the public's interest *in this case*.

That being the case, plaintiffs ask the Court to focus solely on the "prospective effect of the ***rule***" and whether "other, similar work product" will be created "if it is subject to discovery." Pls. Br. 12-13. That question, however, goes to the *merits of the appeal*, not to the issuance of a stay. These are fundamentally different issues. Only the latter is relevant.

Plaintiffs do not argue that immediate disclosure will moot their appeal. Thus, the Seventh Circuit will have the opportunity to weigh in on the issue, regardless of whether this Court grants or denies the stay. Once the Seventh Circuit rules, non-parties and their attorneys will have additional guidance concerning what they may do without fear of detection. But that guidance will devolve from the Seventh Circuit's ruling on the *merits* – not this Court's ruling on a motion to stay.

Notably, plaintiffs do not show that denying a stay – versus affirmance on the merits – would chill trial preparation activities in future cases. Such an argument would be foreclosed, in

9

any event, by the Supreme Court's finding in *Mohawk* that pre-appellate disclosure "does not meaningfully reduce the *ex ante* incentives for full and frank consultations between clients and counsel," and its holding that parties do not have the right to *pre-disclosure* appellate review. 558 U.S. at 109. Accordingly, plaintiffs cannot establish that the public interest favors a stay pending appeal.[6]

V.   **CONCLUSION.**

For all the foregoing reasons, Sanofi respectfully requests that the Court deny plaintiffs' motion to stay pending appeal, grant Sanofi's motion to compel, and order the relief requested in Sanofi's motion to compel.

Dated:  May 6, 2013

Respectfully submitted,

/s/ *Scott M. Abeles*

| | |
|---|---|
| Colin R. Kass (admitted *pro hac vice*) | Steven R. Gilford |
| Scott M. Abeles (admitted *pro hac vice*) | Catherine J. Spector |
| PROSKAUER ROSE LLP | PROSKAUER ROSE LLP |
| 1001 Pennsylvania Ave., NW | 70 West Madison St., Suite 3800 |
| Washington, D.C. 20004 | Chicago, IL 60602 |
| T: (202) 416-6800 | T: (312) 962-3550 |
| F: (202) 416-6899 | sgilford@proskauer.com |
| ckass@proskauer.com | cspector@proskauer.com |
| sabeles@proskauer.com | |

*Attorneys for Sanofi Pasteur Inc.*

---

[6] Plaintiffs seek to chide Sanofi by claiming that Sanofi's argument – that pre-appellate disclosure does not adversely affect judicial fact finding in either this or future cases – "proves too much" because it suggests that courts should always deny a stay in this situation. Pl. Br. 12. But, at least since *Mohawk*, that *is* the law. It is plaintiffs' argument that "proves too much" because, were it true that pre-appellate disclosure impinged the public interest, a stay would hardly be an "extraordinary remedy," and *Mohawk* would have been decided the other way.

**CERTIFICATE OF SERVICE**

  I hereby certify that on May 6, 2013, I caused to be served by electronic mail, a copy of Sanofi's Notice of Motion to Enforce Subpoena on:

  Rahsaan Sales
  Assistant General Counsel
  Navigant
  30 South Wacker Drive, Suite 3550
  Chicago, Illinois 60606
  Rahsaan.sales@navigant.com

  Peter Pearlman
  Cohn Lifland Pearlman Herrmann & Knopf LLP
  Park 80 West, Plaza One
  250 Pehle Avenue, Suite 401
  Saddle Brook, New Jersey 07663
  psp@njlawfirm.com

and via the Court's Electronic Filing system, on:

  <u>Counsel of Record for Plaintiffs:</u>
  Scott F. Hessell
  Matthew T. Slater
  Sperling & Slater, P.C.
  55 West Monroe Street, Suite 3200
  Chicago, Illinois 60603
  shessell@sperling-law.com
  mslater@sperling-law.com

  Daniel J. Walker
  Zachary D. Caplan
  Berger & Montague, P.C.
  1622 Locust Street
  Philadelphia, Pennsylvania 19103
  dwalker@bm.net
  zcaplan@bm.net

           Respectfully submitted,

           /s/ *Scott M. Abeles*
           Scott M. Abeles